**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MONICA TASKER** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. _____** |
| | ) | |
| **BMO BANK, N.A.,** | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

This is an action for age and gender discrimination arising from the unlawful termination of Plaintiff Monica Tasker, a 65-year-old woman with decades of exemplary banking experience, by her employer, BMO. After more than seventeen years of loyal service, strong performance, and no disciplinary history, Plaintiff was abruptly terminated without warning, progressive discipline, or corrective action. At the time of her termination, Plaintiff was one of the oldest and highest-paid Associate Bankers in her region. Younger and male employees who engaged in similar or more serious conduct were not disciplined or terminated. Defendant's actions were motivated by discriminatory animus based on Plaintiff's age and gender and resulted in significant professional, financial, and emotional harm.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as Plaintiff's federal claims.

2. The employment practices alleged to be unlawful were committed within the state of Illinois and within the jurisdiction of the United States District Court for the Northern District of Illinois.

## PARTIES

3. Plaintiff, Monica Tasker is a resident of Illinois.

4. At all relevant times, Defendant BMO Bank, N.A. (also referred to as "Defendant" or "BMO") has continuously been doing business in the State of Illinois and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

6. At all relevant times, Defendant has been a covered entity under Title VII and IHRA.

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Monica Tasker filed a charge with the IDHR alleging violations of Title VII and IHRA by Defendant.

8. The IDHR issued to Defendant a Letter of Determination and a right to sue letter. See Exhibit A. Received by Plaintiff days later.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL BACKGROUND

10. Plaintiff Monica Tasker is a 65-year-old woman with more than twenty years of experience in the banking industry.

11. Plaintiff was employed by BMO from approximately 2007 until her termination on January 6, 2025.

12. Plaintiff began her employment with BMO as a teller and, after approximately four years, was promoted to Retail Banker.

13. In or about April 2024, Plaintiff transitioned back into the role of Associate Banker (teller), a position she held until her termination.

14. At the time of her termination, Plaintiff had decades of banking experience, was one of the oldest Associate Bankers in her branch and region and was among the highest-paid employees in that role.

15. Throughout her employment, Plaintiff met or exceeded all performance expectations, maintained positive relationships with customers and coworkers, and had no history of disciplinary action, corrective action, or performance improvement plans.

16. Plaintiff reasonably expected to continue her employment with BMO through retirement.

**Internal Investigation**

17. In or about late 2023 through 2024, BMO conducted an internal investigation concerning leadership within the Cary–Barrington Market, including the Market President.

18. As the scope of the investigation expanded, Plaintiff became a subject of the investigation despite her role as an Associate Banker and lack of prior discipline.

19. On December 18, 2024, Plaintiff was interviewed by two internal investigators identified as Sandy and Julie.

20. Plaintiff fully cooperated with the investigation and answered all questions truthfully.

21. During the interview, Plaintiff was treated in a hostile and accusatory manner, including being interrupted while attempting to explain answers and being repeatedly challenged as to whether she was "sure" about her responses.

22. Plaintiff wears hearing aids. During the interview, she adjusted her hearing aid settings using her phone. Investigators accused her of attempting to record the interview, despite her explanation that she was adjusting the volume of her hearing aids.

23. At the conclusion of the interview, one investigator warned Plaintiff that she could not "retaliate" and questioned whether Plaintiff understood what retaliation meant.

## Termination

24. On January 6, 2025, at the end of the business day, BMO terminated Plaintiff's employment.

25. Plaintiff was terminated without any prior warnings, coaching, progressive discipline, or performance improvement plan.

## Alleged Policy Violations

26. The allegations cited as justification for Plaintiff's termination were either factually incorrect, mischaracterized, or involved conduct consistent with customer requests or standard banking practices.

27. Plaintiff did not engage in improper certificate of deposit laddering.

28. Any account closure conducted via email was done at the request of the customer.

29. Any unsecured wire transfer email was unintentional.

30. A confirmation of transaction (COT) sent by email contained no customer information and was blank.

31. Product referrals were generated because Plaintiff proactively discussed available products with customers, consistent with her job responsibilities.

32. Plaintiff was never coached, counseled, or disciplined for any of these alleged issues prior to her termination.

**Disparate Treatment**

33. Other employees who were younger and/or lower paid engaged in similar or more serious conduct but were not investigated or terminated.

34. Plaintiff was treated differently from similarly situated employees who were not members of her age group.

35. Plaintiff was singled out for termination despite her strong performance history, experience, and compliance with procedures.

36. Plaintiff's termination also occurred in the context of broader internal retaliation related to the investigation of senior leadership within the region.

**Impact of Termination**

37. Plaintiff's termination caused severe emotional distress, humiliation, and loss of professional identity.

38. At her age, the termination significantly disrupted Plaintiff's retirement plans and created substantial uncertainty regarding her financial future.

39. Plaintiff had taken pride in her work and believed in BMO's stated values, including its commitment to supporting women of all ages.

40. Plaintiff's abrupt termination without warning, support, or corrective action caused lasting emotional and professional harm.

**COUNT I – WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
**(Retaliation)**

41. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

42. Plaintiff was terminated despite a long history of strong performance, positive evaluations, promotions, and recognition as a top performer.

43. Plaintiff's termination was not based on legitimate performance issues but was instead pretextual and retaliatory in nature.

44. Plaintiff raised good-faith concerns internally regarding practices that she reasonably believed were improper, unethical, and harmful to customers.

45. Plaintiff also complied with BMO's stated policies requiring employees to speak up and report concerns, which imposed an affirmative duty on employees to raise issues of potential misconduct.

46. After Plaintiff made these internal complaints and questioned these practices, BMO terminated her employment.

47. The temporal proximity between Plaintiff's protected complaints and her termination supports an inference of retaliatory motive.

48. BMO's stated reasons for Plaintiff's termination were inconsistent, selectively enforced, and contradicted by management's prior knowledge and approval of Plaintiff's conduct.

49. Plaintiff refused to answer the questions asked by BMO investigators against other female employees as they wanted her to. Plaintiff's termination violated clearly established public policy protecting employees who report suspected wrongdoing and advocate for lawful, ethical treatment of customers.

50. As a direct and proximate result of BMO's wrongful termination, Plaintiff has suffered lost wages, lost benefits, emotional distress, and other damages in an amount to be proven at trial.

## COUNT II – AGE DISCRIMINATION
**(Federal – Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.)**

51. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

52. Plaintiff was over sixty years old at the time of her termination and was therefore a member of the protected class under the Age Discrimination in Employment Act ("ADEA").

53. Plaintiff was qualified for her position and consistently performed her job at a high level, as demonstrated by her performance reviews.

54. At the time of her termination, Plaintiff was one of the oldest members of her team.

55. BMO terminated Plaintiff's employment and replaced her with a substantially younger individual in their twenties.

56. During Plaintiff's tenure, BMO increasingly hired younger employees, while older, experienced employees were terminated or pushed out.

57. Age was a motivating factor and a "but-for" cause of Plaintiff's termination.

58. BMO's stated reasons for Plaintiff's termination were pretextual and used to mask discriminatory intent.

59. As a direct and proximate result of BMO's age discrimination, Plaintiff has suffered lost wages, lost benefits, emotional distress, and other damages recoverable under the ADEA.

## COUNT III – AGE DISCRIMINATION
**(State – Illinois Human Rights Act, 775 ILCS 5/1-101 et seq.)**

60. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

61. Plaintiff was over the age of forty (40) at all relevant times and was a member of a protected class under the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 et seq.

62. Plaintiff was qualified for her position and consistently met or exceeded BMO's legitimate performance expectations.

63. Plaintiff was the oldest member of his team at the time of her termination.

64. BMO terminated Plaintiff's employment and replaced her with a substantially younger employee in their twenties.

65. BMO's actions constituted discrimination on the basis of age in violation of the Illinois Human Rights Act.

66. As a direct and proximate result of BMO's unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, and other damages recoverable under Illinois law.

**COUNT IV – SEX DISCRIMINATION**
**(Federal – Title VII of the Civil Rights Act of 1964)**

67. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

68. Plaintiff is a woman and a member of a protected class under Title VII of the Civil Rights Act of 1964.

69. At all relevant times, Defendant was an employer within the meaning of Title VII.

70. Plaintiff was qualified for her position as an Associate Banker and consistently met or exceeded Defendant's legitimate performance expectations throughout her employment.

71. Despite Plaintiff's long tenure, strong performance history, and absence of any prior disciplinary record, Defendant terminated Plaintiff's employment on January 6, 2025.

72. Defendant treated Plaintiff less favorably than similarly situated male employees who engaged in similar or more serious conduct but were not investigated, disciplined, or terminated.

73. Defendant failed to follow progressive discipline, coaching, or corrective action procedures before terminating Plaintiff, despite applying such measures to male employees.

74. Defendant's stated reasons for Plaintiff's termination were pretextual and not applied consistently across genders.

75. Defendant's actions were motivated, at least in part, by discriminatory animus based on Plaintiff's gender.

76. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, and other compensatory damages.

## COUNT V – SEX DISCRIMINATION
### (State – Illinois Human Rights Act)

77. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

78. Plaintiff is a female employee protected under the Illinois Human Rights Act.

79. Defendant is an employer subject to the provisions of the Illinois Human Rights Act.

80. Plaintiff was qualified for her position, performed her duties competently, and had no history of discipline prior to her termination.

81. Defendant terminated Plaintiff's employment without warning, corrective action, or performance improvement, despite Plaintiff's strong performance record.

82. Male employees who engaged in similar conduct or who were more directly involved in alleged procedural violations were treated more favorably and were not terminated.

83. Defendant selectively enforced its policies in a manner that disproportionately harmed Plaintiff because of her gender.

84. Defendant's actions constituted unlawful discrimination on the basis of sex in violation of the Illinois Human Rights Act.

85. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered economic losses, emotional distress, damage to her professional reputation, and loss of future employment opportunities.

## DAMAGES

1. Plaintiff's termination caused significant emotional distress, humiliation, and loss of professional standing.

2. Being terminated at Plaintiff's age after a long and successful career was deeply traumatic.

3. Plaintiff has suffered lost wages, lost benefits, emotional pain, and damage to her reputation.

4. Plaintiff was proud to work for BMO and relied on Defendant's stated commitment to supporting employees of all ages, races, and genders.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

a. All damages allowed under the claims as set forth above;
b. Compensatory damages for monetary and non-monetary loss;
c. Prejudgment interest;
d. Costs;
e. Punitive Damages
f. Attorney's fees; and
g. Such other relief as in law or equity may pertain.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial.

DATED: February 24, 2026           Respectfully filed,
By: *Electronic Signature of Frank Avila*
On behalf of the Plaintiff Monica Tasker
Frank Avila
Attorney and Counselor at Law
Illinois ARDC No. 6273730
65 W Jackson Blvd.
Chicago, Illinois 60604
Telephone: 773-671-3480
E-mail: FrankAvilaLaw@Gmail.com

11